**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-2043**

FAY COLE,

Plaintiff - Appellant

v.

FAMILY DOLLAR STORES OF MARYLAND, INC.,

Defendant - Appellee

and

FAMILY DOLLAR, INC.,

Defendant.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Paula Xinis, District Judge.  (8:17-cv-00393-PX)

Argued:  December 10, 2019                          Decided:  April 27, 2020

Before WILKINSON, THACKER, and RUSHING, Circuit Judges.

Affirmed by unpublished opinion.  Judge Rushing wrote the opinion, in which Judge Wilkinson and Judge Thacker joined.

**ARGUED:** Richard Allen Salzman, HELLER, HURON, CHERTKOF & SALZMAN, PLLC, Washington, D.C., for Appellant.  Denise E. Giraudo, SHEPPARD MULLIN RICHTER & HAMPTON LLP, Washington, D.C., for Appellee.  **ON BRIEF:** Julia T.

Quinn, HELLER, HURON, CHERTKOF & SALZMAN, PLLC, Washington, D.C., for Appellant. Jenna N. Mennona, SHEPPARD MULLIN RICHTER & HAMPTON LLP, Washington, D.C., for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

RUSHING, Circuit Judge:

Family Dollar Stores of Maryland, Inc. fired Fay Cole after she failed to attend work two days in a row without notifying her manager. Cole sued, alleging that Family Dollar fired her because of her age and in retaliation for a prior age discrimination complaint. She also alleged that Family Dollar failed to accommodate her disability. The district court granted summary judgment for Family Dollar on all of Cole's claims. After a careful review of the record, we affirm.

I.

When reviewing a grant of summary judgment, we view the facts and draw all reasonable inferences in the light most favorable to Cole as the nonmoving party. *See Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

Family Dollar hired Cole in October 2012 as a customer service representative at its Capitol Heights, Maryland location. Cole was 48 years old at the time and suffered from a psychiatric condition. A few weeks after she was hired, Cole received approval from an unnamed manager to take medical leave for hospitalization related to her condition. She was absent from work on leave for most of November.

When Cole returned to work, Tiffanii Thompson, who was 27 years old, had replaced Cole's former manager. According to Cole, Thompson made repeated remarks about Cole's age, saying that she wanted to "get rid of old employees" to hire younger people and telling Cole that she was not "too old to stock" or "too old to sweep." Cole also testified at her deposition that Thompson commented on the knee brace Cole wore for arthritis, mocking her for moving slowly and telling Cole that she could lose her job if she

3

did not do what Thompson asked. Cole's daughter, Tiffany Dargin, testified that she saw Thompson and others mock her mother, although she could not remember what they said.

Family Dollar records indicate that Cole incurred unexcused absences from work on December 2 and December 21. Cole was absent again on December 30 and January 2; the parties dispute whether those absences were merely unexcused or were more egregious "no call/no show" absences. Under Family Dollar's attendance policy, of which Cole was aware, an employee must "personally speak with his/her Manager daily if for any reason he/she is going to be late or absent. The Team Member should speak with his/her Manager directly on or before the start of the workday." J.A. 232. Calling out on the day of an employee's shift without prior approval, including for illness, is an unexcused absence under Family Dollar policy. Employees who do not show up for their shift and do not contact their manager or provide any notice of their absence incur a no call/no show absence. Thompson testified that employees' unexpected absences caused difficulties for the store because Thompson had to scramble to find another employee to cover the shift or ultimately cover the shift herself, resulting in less security throughout the store due to the reduced employee count. Pursuant to Family Dollar's policy, an employee could be fired for a single attendance policy violation.

On January 8, 2013, Cole contacted Family Dollar's human resources department and complained that Thompson was giving more hours to younger employees than to Cole. In response, District Manager Marsha Walker arranged to meet with Cole and Thompson the next day to discuss Cole's complaint. Cole testified that, during her meeting with Walker and Thompson, they discussed Cole's complaint, her recent absences, and

4

Thompson's disparaging remarks. Cole also testified that Walker told her Cole should not have gone over her manager's head with the complaint and that Walker did not think Cole's complaint was true.

The following week, Cole was scheduled to work on January 16, 18, and 19. Cole attended work on January 16 but missed her shifts on January 18 and 19 without providing notice or contacting Thompson, incurring two no call/no show absences. Thompson considered these absences to be job abandonment and requested Walker's approval to terminate Cole's employment. After Walker spoke with human resources and her regional vice president, she approved Thompson's request. Thompson then fired Cole.

After she was fired, Cole filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging that Family Dollar discriminated and retaliated against her based on her age and disability. Cole subsequently filed suit in the United States District Court for the District of Maryland, alleging discrimination, retaliation, and failure-to-accommodate claims under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634; the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213; and the Prince George's County Code. Family Dollar moved for summary judgment, and the district court granted the motion. The court held: (1) the Prince George's County Code claims were time-barred; (2) Cole properly exhausted her administrative remedies; (3) no rational factfinder could rule in Cole's favor on her ADEA discriminatory discharge claims, because the evidence demonstrates she was fired for violating Family Dollar's attendance policy; (4) no rational factfinder could rule in Cole's favor on her ADEA retaliation claims, because her hours were not cut after she

5

complained and she did not rebut Family Dollar's evidence that she was fired for absenteeism; and (5) Cole's ADA claim failed because Family Dollar accommodated her psychiatric condition by permitting her to return to work after her hospitalization.

Cole timely appealed. On appeal, she challenges only the district court's holdings on her ADEA discrimination and retaliation claims and her ADA failure-to-accommodate claim. Family Dollar does not contest the district court's holding that Cole properly exhausted her administrative remedies as to these claims.

## II.

"We review a district court's decision to grant summary judgment de novo, applying the same legal standards as the district court." *Smith v. Gilchrist*, 749 F.3d 302, 307 (4th Cir. 2014) (quoting *T-Mobile Ne. LLC v. City Council of Newport News*, 674 F.3d 380, 384–385 (4th Cir. 2012)). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court "must ask [it]self not whether [it] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). We may not "weigh the evidence and determine the truth of the matter" but only "determine whether there is a genuine issue for trial." *Id.* at 249. At the same time, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

## III.

Cole alleges that Family Dollar violated the ADEA by terminating her based on her age and in retaliation for her complaint to human resources. We consider both ADEA claims together, as Cole has presented them on appeal. We conclude that she has failed to present a genuine dispute of material fact that Family Dollar violated the ADEA in either respect.

The ADEA forbids an employer "to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). It also prohibits an employer from retaliating against an employee for engaging in protected activity, such as making a charge of age discrimination or opposing a practice made unlawful by the ADEA. 29 U.S.C. § 623(d).

A plaintiff can prove a violation of the ADEA through direct or circumstantial evidence. *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019). Regardless of the method of proof, a plaintiff retains the ultimate burden to prove by a preponderance of the evidence that age or retaliation was "the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–178 (2009); *see Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015) ("[T]he *McDonnell Douglas* framework has long demanded proof at the pretext stage that retaliation was a but-for cause of a challenged adverse employment action."). "[A]n employee cannot prevail on an age discrimination claim by showing that age was *one* of multiple motives for an employer's decision; the employee must prove that the employer *would not have fired her* in the absence of age discrimination." *Westmoreland*,

7

924 F.3d at 725 (emphasis in original) (citing *Gross*, 557 U.S. at 177); *see also id.* at 725 n.2 (applying *Foster* to the *McDonnell Douglas* framework for an ADEA claim). We consider Cole's circumstantial and direct evidence in turn.

A.

A plaintiff can prove an ADEA violation through circumstantial evidence using the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804 (1973). *See Westmoreland*, 924 F.3d at 725. The *McDonnell Douglas* framework follows three steps: "(1) the plaintiff must establish a prima facie case of discrimination or retaliation; (2) if the plaintiff presents a prima facie case, then the burden shifts to the defendant to show a legitimate non-discriminatory or non-retaliatory reason for the adverse employment action; and (3) if the defendant shows such a reason, then the burden shifts to the plaintiff to prove that the reason is pretextual." *Sanders v. Tikras Tech. Sols. Corp.*, 725 Fed. App. 228, 229 (4th Cir. 2018) (per curiam) (citing *McDonnell Douglas*, 411 U.S. at 802–804; *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016)). At the final stage, "[t]he employee must 'prove by a preponderance of the evidence that the legitimate reasons offered by the defendant-employer were not its true reasons, but were a pretext for discrimination.'" *Westmoreland*, 924 F.3d at 726 (brackets omitted) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Assuming without deciding that Cole can establish a prima facie case of discrimination and

retaliation,[1] we conclude that she cannot satisfy the third step, as she has not produced evidence raising a genuine issue of material fact that Family Dollar's legitimate reason for her termination—two consecutive no call/no show absences—was pretextual.

Cole primarily argues that Family Dollar's attendance records reveal that the reason for her termination was pretextual because younger employees (who had not complained of discrimination) missed shifts without discipline. According to Cole, the attendance records show at least four employees accrued more than a dozen unexcused absences, at least four employees missed two consecutive shifts, and at least seven employees missed two shifts in one week, yet none of them were terminated for their attendance problems. Family Dollar proffered its own evidence that Thompson fired twelve employees for absenteeism in the approximately one year she spent as manager of the Capitol Heights store, nine under the age of 40 and three (including Cole) over the age of 40.

Comparator evidence is useful in assessing pretext only when the comparator employees "were similarly situated to the plaintiff (but for the protected characteristic)." *Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 719 (4th Cir. 2013) (citing *McDonnell Douglas*, 411 U.S. at 804); *see also Heyward v. Monroe*, 166 F.3d 332 (Table), 1998 WL 841494,

---

[1] To establish a prima facia case of age discrimination, a plaintiff must prove: "(1) at the time of her firing, she was at least 40 years of age; (2) she was qualified for the job and performing in accordance with her employer's legitimate expectations; (3) her employer nonetheless discharged her; and (4) a substantially younger individual with comparable qualifications replaced her." *Westmoreland*, 924 F.3d at 725. To establish a prima facia case of retaliation under the ADEA, a plaintiff must show: "(1) [s]he engaged in protected activity; (2) an adverse employment action was taken against [her]; and (3) there was a causal link between the protected activity and the adverse action." *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006).

at *2 (4th Cir. 1998) (reasoning plaintiff failed to show that other employees were similarly situated, because she did not "show that they [we]re similar in all relevant respects"); *Coleman v. Donahoe*, 667 F.3d 835, 841 (7th Cir. 2012) ("[T]he proposed comparator must be similar enough to permit a reasonable juror to infer, in light of all the circumstances, that an impermissible animus motivated the employer's decision."). Cole's comparator evidence fails to show that she was similarly situated to the other employees, because she has identified only employees with unexcused absences—which include absences when an employee notifies her manager on the day of her shift—rather than employees with no call/no show absences like Cole. At oral argument, counsel for Cole conceded that the record did not contain evidence about whether other employees' absences were no call/no show. Oral Arg. at 2:21–3:06. This distinction is important, because Thompson testified that she considered two consecutive no call/no show absences to be "job abandonment."[2] And no call/no show absences magnified the hardship to Family Dollar caused by employee absences, forcing Thompson to scramble to find another employee to cover the

---

[2] Cole also suggests we can infer pretext from Family Dollar's "shifting explanations" for her termination, noting that Family Dollar has offered different analyses of the number of her absences at different stages of this dispute. But Cole herself emphasizes that Thompson has consistently maintained she fired Cole solely because of two consecutive no call/no show absences on January 18 and 19. *See infra* Part IV. And Family Dollar has consistently represented that Cole was fired for absenteeism. Accordingly, a factfinder could not conclude that the decisionmaker proffered changing explanations for Cole's termination that would indicate pretext. *Cf. Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 225 (4th Cir. 2019) ("This Court has allowed an inference of pretext in cases where an employer has made substantial changes to its proffered reason for discharge over time."); *Wesley v. Arlington Cty.*, 354 Fed. App. 775, 782 (4th Cir. 2009) (per curiam) (finding inconsistent explanations probative of pretext when employer's reasons for not promoting plaintiff were contradicted by decisionmaker's testimony).

shift or cover the shift herself, at the expense of store security. Without evidence as to whether Thompson was indifferent to younger employees' consecutive no call/no show absences, Cole's comparator evidence is insufficient to establish pretext.

Cole also contends that an earlier draft of the Capitol Heights store schedule for the week of January 13–19, 2013, which does not show Cole scheduled to work on January 18 or 19, demonstrates pretext. In her briefs on appeal, Cole claims that she picked up her work schedule on Thursday, January 10, noting that Family Dollar company policy requires managers to prepare and distribute schedules the Thursday before the following work week. Thompson added Cole's January 18 and 19 shifts to the final schedule on Friday, January 11 without expressly informing Cole—evidence, Cole claims, that her firing for missing those days was pretextual.

The record does not support Cole's theory. As Cole's counsel conceded at oral argument, nothing in the record suggests that Cole collected her work schedule on Thursday, January 10. Oral Arg. at 14:55–15:47, 31:26–32:07. At her deposition, Cole testified it was her routine to attend weekly store meetings every Saturday, at which she would receive her schedule for the following week, and in her declaration Cole confirmed that she collected her schedule for the week in question "in accordance with [her] normal practice." J.A. 250–251; *see* J.A. 195, 207. Moreover, it is undisputed that the final schedule was posted next to the kiosk where Cole worked, so she could have seen the schedule during her shift on January 16. There is simply no evidence that Thompson conspired to make Cole miss her January 18 and 19 shifts.

11

Specifically regarding retaliation, Cole also highlights that she was fired thirteen days after complaining of discrimination and twelve days after District Manager Walker allegedly rebuked her for complaining about Thompson during their meeting. Close temporal proximity can demonstrate causation, an element of Cole's prima facie case of retaliation. *See Waag v. Sotera Defense Sols., Inc.*, 857 F.3d 179, 192 (4th Cir. 2017) ("[F]or purposes of establishing a prima facie case, close temporal proximity between activity protected by the statute and an adverse employment action may suffice to demonstrate causation." (citing *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004), *abrogated on other grounds by Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013))). But to carry her burden at the pretext stage of showing "that retaliation was a but-for cause" of her termination, Cole must present evidence to "establish both that the employer's reason [for the termination] was false and that retaliation was the real reason for the challenged conduct." *Foster*, 787 F.3d at 252 (internal quotation marks and brackets omitted). Cole has not presented such evidence. Between her complaint to human resources and her termination, an intervening event occurred: Cole incurred two consecutive no call/no show absences, which Family Dollar says were the basis for her termination. Cole admits that she did not work or notify Thompson of her absence either day and that she could be fired for violating Family Dollar's attendance policy. Cole has not produced evidence tending to show that Family Dollar's non-discriminatory reason for firing her was false. *Cf. Laber*, 438 F.3d at 432 (granting summary judgment on plaintiff's ADEA retaliation claim because he did not produce sufficient evidence to suggest that his employer's proffered justification for his non-selection was false).

12

B.

Cole also asserts direct evidence of age discrimination: Thompson's alleged derogatory comments about Cole's age and her stated desire to hire younger employees. "[I]f a plaintiff is able to produce direct evidence of discrimination, [s]he may prevail without proving all the elements of a prima facie case." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002); *see also Goldberg v. B. Green and Co.*, 836 F.2d 845, 848 (4th Cir. 1988) (stating that a plaintiff could prove discrimination with "direct evidence of a stated purpose to discriminate"). Direct evidence is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Taylor v. Virginia Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (en banc) (quoting *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir. 1995)), *abrogated on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98 (2003).

"Derogatory comments about an employee's age may be direct evidence of age discrimination, provided they concern the employee's age and sufficiently demonstrate that the employer's age-related animus affected the employment decision at issue." *Arthur v. Pet Dairy*, 593 Fed. App. 211, 218 (4th Cir. 2015) (per curiam) (citing *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 300 (4th Cir. 2010); *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 288–289 (4th Cir. 2004) (en banc), *abrogated in part by Gross*, 557 U.S. at 175–176; *Dockins v. Benchmark Commc'ns*, 176 F.3d 745, 751 (4th Cir. 1999)); *see*, *e.g.*, *E.E.O.C. v. Warfield-Rohr Casket Co.*, 364 F.3d 160, 162, 164–165 (4th Cir. 2004) (decisionmaker told plaintiff, at the time he was fired, that he was being terminated because he was "getting too . . . old" and another employee was being retained

13

because that employee "could give him more years"). In *Arthur*, we applied the Fifth Circuit's test from *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374 (5th Cir. 2010), to determine whether derogatory comments were direct evidence of actionable age discrimination, and both parties have applied that test here. Under *Jackson*, derogatory comments are direct evidence of discrimination if they are (1) "related to the protected class of persons of which the plaintiff is a member"; (2) "proximate in time to the complained-of adverse employment decision"; (3) "made by an individual with authority over the employment decision at issue"; and (4) "related to the employment decision at issue." *Id.* at 380 (internal quotation marks omitted).

As with circumstantial evidence, however, a plaintiff producing direct evidence still must prove by a preponderance that age was the but-for cause of the challenged employer decision. *See Gross*, 557 U.S. at 177–178; *Westmoreland*, 924 F.3d at 725. "In other words, if there existed other legitimate motivations for the decision, the employee must offer sufficient evidence to show that these factors were not 'the reason' for the employer's decision." *Arthur*, 593 Fed. App. at 220 (quoting *Gross*, 557 U.S. at 176); *see also Westmoreland*, 924 F.3d at 725 (An "employee must prove that the employer *would not have fired her* in the absence of age discrimination," not merely that "age was *one* of multiple motives" for the decision. (emphasis in original)). It follows that "direct evidence of age discrimination may not always be sufficient to create a question of fact for trial in the ADEA context." *Scheick v. Tecumseh Pub. Schs.*, 766 F.3d 523, 532 (6th Cir. 2014).

We conclude that is the case here. Even assuming Thompson's comments qualify as direct evidence of age discrimination, Family Dollar has presented evidence of another,

14

legitimate, motivation for Cole's termination: her consecutive no call/no show absences, which violated Family Dollar's attendance policy. Cole has not offered sufficient evidence to suggest that her attendance was not "the reason" for her termination, such that a reasonable juror could find age was instead the determinative factor in that decision. *See Arthur*, 593 Fed. App. at 220–221. As we explained with respect to pretext, Cole admits that she did not notify Thompson of her absence on January 18 or 19 and that she could be fired for violating Family Dollar's attendance policy. And none of Cole's proffered evidence casts doubt on this legitimate reason for her termination. *See supra* Part III.A. Accordingly, viewing the evidence in the light most favorable to Cole, her circumstantial and direct evidence together at best demonstrate that "age was simply a motivating factor," not the "but-for cause," of her termination. *Gross*, 557 U.S. at 174, 177–178; *see Arthur*, 593 Fed. App. at 221–222. We therefore conclude that no reasonable jury could find in Cole's favor on her ADEA discrimination or retaliation claims.

## IV.

Cole also contends that Family Dollar did not accommodate her psychiatric condition as required by the ADA because, although it permitted her to return to work after an extended absence for hospitalization, Family Dollar later treated those absences as unexcused and used them to justify her termination to the EEOC. We agree with the district court that there is no genuine dispute of material fact as to whether Family Dollar violated the ADA.

To establish a prima facie case for failure to accommodate under the ADA, a plaintiff must show: "(1) that [s]he was an individual who had a disability within the

15

meaning of the statute; (2) that the employer had notice of [her] disability; (3) that with reasonable accommodation [s]he could perform the essential functions of the position; and (4) that the employer refused to make such accommodations." *Wilson v. Dollar General Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (alterations in original omitted) (quoting *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001)).

The district court found that Cole could not establish the fourth element—that Family Dollar refused to make an accommodation—and we agree. The record shows that Family Dollar permitted Cole to return to work after a multiweek absence for hospitalization in November (the accommodation she had requested) and later fired her for additional, unrelated absences. Although Family Dollar appears to have relied on Cole's total of twenty-two unexcused absences in its EEOC filing, the record does not support a conclusion that Cole was fired for all those absences. Rather, as Cole repeatedly emphasizes in her ADEA claims, Thompson maintained she fired Cole solely because of two consecutive no call/no show absences on January 18 and 19. Indeed, Thompson testified that she did not consider any absences "other than the two days of no show, no call," which she considered "job abandonment," in deciding to fire Cole. J.A. 458–459. In addition, Family Dollar's records appear to indicate, as Cole suggests, that her absences for hospitalization were considered "unexcused" but not "unscheduled." In any event, Cole has not identified evidence from which a jury could conclude that Family Dollar denied her requested accommodation or later penalized her for her hospitalization absences. The district court therefore correctly granted summary judgment for Family Dollar on Cole's ADA accommodation claim.

16

\* \* \*

For the foregoing reasons, the district court's order of summary judgment is

*AFFIRMED*.